IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DOUGLAS O'CONNOR,                           No  C 06-3706 VRW

    Plaintiff,                              ORDER

    v

STARBUCKS CORPORATION,

    Defendant.
_____/

        Douglas O'Connor filed a class action against Starbucks Corporation ("Starbucks") alleging that Starbucks's policy of requiring its California-based employees to launder their work aprons without compensation violates California law. Doc #1 Exh A at ¶¶1, 34. Starbucks moved for summary judgment on all of plaintiff's claims. Doc #69. The court GRANTS Starbucks's motion because Starbucks owes plaintiff a duty to pay such compensation only if the aprons require laundering separate from plaintiff's regular laundry, and plaintiff has not raised a genuine issue of material fact that the aprons require separate laundering. Hence, plaintiff has not shown that he has suffered injury sufficient to establish standing.

I

Plaintiff worked for approximately one month as a barista in one of Starbucks's downtown San Francisco locations. Doc #75 at 22 (Exh E at 50:19-21).[1] Starbucks concedes that it provided plaintiff with a green apron to wear while working. Doc #69 at 7:4-5. Starbucks required that the apron "must be worn at all times while working * * *." Doc #70 at 16. Starbucks also concedes that the apron is a uniform within the meaning of the California Code of Regulations. Doc #69 at 8 n2; see Cal Code Regs tit 8, § 11070 subd 9(A) (defining "uniform" as "apparel and accessories of distinctive design or color"). Under Starbucks's employee manual, plaintiff was "responsible for laundering and maintaining his or her own aprons." Doc #70 at 16 (Exh 2); Doc #69 at 8 n2.

During his employment, plaintiff had his apron dry-cleaned at his own expense by Sea Breeze, a laundry service in San Francisco. See Doc #70 at 5 (Exh 1 (O'Connor deposition) at 15:9-25 (discussing plaintiff's practice of using Sea Breeze for his laundry and dry-cleaning)); at 9 (156:3-10 (stating that after plaintiff received his apron, he started "a dry-cleaning program" at Sea Breeze); at 156:17-157:14 (discussing plaintiff's receipts for the dry-cleaning of the apron)); at 10-11 (157:24-158:25 (recounting plaintiff's conversations with a Sea Breeze employee about the advantages of dry-cleaning the apron)); Doc #75 at 37-39 (plaintiff's receipts from Sea Breeze). Plaintiff conceded that the apron "didn't require dry-cleaning." Doc #70 at 11 (Exh 1 at

---

[1] Citations are to ECF document number (#__) and page with the parties' reference in parentheses.

2

158:2-5). The tag on a representative apron states that the apron is machine-washable and may be tumble-dried. See Apron (manually filed at Doc #49 Exh B). Plaintiff testified that it was a Sea Breeze employee who advised him to opt for dry-cleaning on grounds that if washed together with other garments the dye on the apron was likely to bleed into them. Doc #70 at 11 (Exh 1 at 158:4-23). Neither plaintiff nor Sea Breeze ever laundered the apron. Doc #70 at 11 (Exh 1 at 158:24-25). Plaintiff now seeks compensation for "hours worked" and "all sums expended" maintaining the apron pursuant to California Labor Code section 1199 and California Code of Regulations section 11070(20)(A). Doc #1 (notice of removal) Exh A (complaint) at ¶¶3, 26, 36. Plaintiff alleges that Starbucks's policy of requiring its California employees to launder their work aprons violates California Code of Regulations, title 8, section 11070 9(A), which states that "[w]hen uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer." Doc #1 at ¶¶1, 34; Cal Code Regs tit 8, § 11070, subd 9(A).

The Industrial Welfare Commission ("IWC") is a state agency empowered to formulate regulations known as wage orders governing employment in California. Fitz-Gerald v SkyWest Airlines, Inc, 155 Cal App 4th 411, 416 (2007). In issuing wage orders, California law requires the IWC to provide a "Statement of Basis." Small v Superior Court, 148 Cal App 4th 222, 230 (2007). The Statement of Basis is in essence "an explanation of how and why the IWC did what it did." California Manufactures Ass'n v IWC, 109 Cal App 3d 95, 106 (1980). In this case, the IWC's Statement of

Basis explaining its intent in adopting Section 9(A) of its wage order stated that "[g]arments requiring separate laundering because of heavy soil or color * * * require more than 'minimal care' by modern standards, and the employer who requires such uniforms must provide for their maintenance."  Doc #76 Exh B at 25.  The IWC also published a document titled "Uniforms - an Explanation of Industrial Welfare Commission Regulations" which stated that "[e]mployers must maintain or provide a maintenance allowance for uniforms requring ironing or dry cleaning or uniforms requiring special laundering for heavy soil * * *."  Doc #76 at 13 (Exh C at ¶5(b)).

        Starbucks moved for summary judgment arguing that there is no genuine factual dispute because the apron required neither dry-cleaning nor separate laundering.  Doc #69 at 7.  First, Starbucks argues that plaintiff admitted in his deposition testimony that the apron did not require dry-cleaning.  Doc #69 at 11.  Second, Starbucks argues that plaintiff offers no evidence of the apron's behavior when laundered with other garments and therefore fails to raise a genuine factual dispute whether the apron required separate laundering.  Doc #69 at 7, 19.  Specifically, Starbucks asserts that neither plaintiff nor Sea Breeze ever laundered the apron and that plaintiff cannot state with personal knowledge how the apron will react when washed with other garments.  Doc #77 at 5.

        Plaintiff responds that whether or not the apron could be washed with his other garments is a disputed factual issue that must be left for trial.  Doc #74 at 12.  The evidence on which plaintiff relies to defeat Starbucks's summary judgment motion may

4

be categorized into two groups: (1) alleged statements of the Sea Breeze employee that Sea Breeze would not wash the apron with other clothing in a standard wash out of concern that the dye would fade into other customers' clothing and (2) emails between employees of Superior Uniform Group ("SUG") – the manufacturer of Starbucks aprons – in response to Starbucks's alleged concern that the body of the apron was "fading disproportionately" to its pocket.  See Doc #74 at 13-14.

Starbucks challenges the admissibility of plaintiff's evidence.  See Doc #77 at 12-14.  Starbucks first argues that the statements of an unidentified Sea Breeze employee are inadmissible hearsay without an exception.  See Doc #77 at 12-14; Doc #79 at 4-5.  With respect to the emails of SUG employees, Starbucks makes a combination of three arguments why they are inadmissible; Starbucks asserts that they are irrelevant, hearsay or unauthenticated.  See Doc #77 at 12-14; Doc #79 at 6.  Starbucks also contends that plaintiff "grossly mischaracterizes" the content of these emails and thus the emails do not actually raise a genuine issue of material fact.  See Doc #79 at 7, 9.

II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v Liberty Lobby, 477 US 242, 248 (1986).  "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 at 248. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. See <u>Celotex Corp v Catrett</u>, 477 US 317, 322-23 (1986). When the moving party has the burden of proof on an issue, the party's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. <u>Calderone v United States</u>, 799 F2d 254, 258-59 (6th Cir 1986).

To defeat summary judgment, the nonmoving party may not simply rely on the pleadings but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting the claim that a genuine issue of material fact exists. <u>TW Elec Serv v Pacific Elec Contractors Ass'n</u>, 809 F2d 626, 630 (9th Cir 1987). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. <u>Thornhill Publishing Co v GTE Corp</u>, 594 F2d 730, 738 (9th Cir 1979). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 US at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 US at 249.

III

The threshold issue is a question of law. Plaintiff argues that the "clear and plain language" of an IWC regulation

controls, while Starbucks argues that the IWC's explanation and interpretation of that language controls.

Plaintiff urges the court to apply the language of an IWC Wage Order:

> When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer.

Cal Code Regs tit 8, § 11070, subd 9(A). Plaintiff argues that this language is unambiguous and establishes a duty for employers to maintain <u>all</u> employee uniforms, regardless of laundering conditions or any other condition.

Starbucks responds by pointing to three IWC documents interpreting that regulatory language far more flexibly. Starbucks argues that the court should interpret the regulatory language in harmony with the IWC's own interpretation. Each IWC document shifts the burden of laundering a uniform from the employer to the employee as long as the burden is minimal. First, the IWC issued a "Statement of Findings by the [IWC] in Connection with the Revision in 1976 of its Orders Regulating Wages, Hours, and Working Conditions":

> The Commission finds it reasonable to require employees to maintain uniforms made of fabrics requiring minimal care.

Doc #76 at 6. Second, the IWC issued its "Statement of Basis" alongside its 1976 Wage Order:

> The Commission found it reasonable to require employees to maintain uniforms made of fabrics requiring minimal care. Garments requiring separate laundering because of heavy soil or color * * * require more than "minimal

**7**

> care" by modern standards, and the employer who requires such uniforms must provide for their maintenance.

Doc #76 at 10.  Third, on December 8, 1977, the IWC published "Uniforms – An Explanation of Industrial Welfare Commission Regulations," which reprinted the language in the Statement of Basis in a section titled "THE COMMISSION'S INTENT."  Doc #76 at 12-14.  The document also elaborated in a separate section:

> Employees can be asked to maintain employer-furnished uniforms which require <u>minimal</u> <u>time</u> for care, e g, uniforms made of a material requiring only washing and tumble or drip drying.
>
> Employers must maintain or provide a maintenance allowance for uniforms requiring * * * special laundering for heavy soil * * *.

Doc #76 at 13 ¶5.

     If plaintiff's interpretation of the regulation is correct, then Starbucks owes a total duty to maintain the aprons.  If Starbucks's interpretation is correct, then Starbucks owes that duty only if evidence establishes that the apron requires "special laundering" because of "heavy soil or color."  The court agrees with Starbucks's reading of California law.

     The California legislature has "authorized the IWC to adopt orders, rules, regulations, and policies to fix the wages, hours, and working conditions of employees in accordance with the objectives of sections 1171-1204."  <u>California Hotel & Motel Ass'n v IWC</u>, 25 Cal3d 200, 211, 599 P2d 31, 38 (1979) (footnote omitted).  Accordingly, the IWC "exercise[s] a legislative function."  <u>Id.</u>

     In interpreting the language of a regulation, courts' "foremost aim is to ascertain the intent of the agency issuing the

8

regulation to effectuate the purpose of the law." <u>Manriquez v Gourley</u>, 130 Cal Rptr 2d 209, 215 (Cal Ct App 2003). "Contemporaneous administrative construction of [an administrative agency's] regulation by the agency charged with its enforcement is entitled to great weight and courts will not depart from such construction unless 'it is clearly erroneous or unauthorized.'" <u>Intoximeters, Inc v Younger</u>, 53 Cal App 3d 262, 270-71, 125 Cal Rptr 864, 870 (Cal Ct App 1975) (alteration in original). "[A]n administrative agency's interpretation of its own regulation obviously deserves great weight * * *." <u>Culligan Water Conditioning v State Board of Equalization</u>, 17 Cal3d 86, 93, 550 P2d 593, 596 (1976). In the absence of an administrative interpretation of the regulation at issue, courts should "proceed to interpret the regulation in accordance with applicable rules of statutory construction," looking to "a variety of extrinsic aids" if "the agency's intent cannot be discerned directly from the language of the regulation." <u>Manriquez</u>, 130 Cal Rptr 2d at 215.

The IWC's "Statement of Basis" is a particularly useful "contemporaneous administrative construction of an administrative regulation." <u>Intoximeters</u>, 53 Cal App 3d at 270-71, 125 Cal Rptr at 870. "A statement of basis is an explanation of how and why the IWC did what it did." <u>California Hotel</u>, 25 Cal 3d at 213, 599 P2d at 39 (footnote omitted). "An effective statement of basis fulfills several functions," including "introduc[ing] an element of predictability into the administrative process. This enables the regulated public to anticipate agency action and to shape its conduct accordingly." <u>California Hotel</u>, 25 Cal 3d at 210, 599 P2d at 37-38.

The IWC's interpretation of the regulation is as clear as one can expect. The "Statement of Basis" states that garments requiring special laundering because of heavy soil or color must be maintained at the employer's expense, whereas garments requiring only minimal care do not require the employer to bear the cost of their maintenance. If there were any doubt as to the IWC's intent, the IWC's 1977 "Explanation" of its uniform regulations includes a section titled "THE COMMISSION'S INTENT" which quotes the Statement of Basis.

In any event, the text of the regulation is not as "clear and plain" as plaintiff suggests. The regulation states: "When uniforms are required by the employer to be worn by the employee as a condition of employment, such uniforms shall be provided and maintained by the employer." Cal Code Regs tit 8, § 11070, subd 9(A). If the regulation read "<u>all</u> uniforms required by the employer * * *," then the regulation might indeed be unambiguous. See <u>Delaney v Superior Court</u>, 50 Cal3d 785 (1990) (holding that the use of "all" in a constitutional provision precluded any exceptions). But the regulation does not say that. Instead, the regulation uses the word "when." The word "when" is not absolute and is too noncommittal to convey the same sense as other, clearer words such as "all" or "whenever." The word "when" is ambiguous because it can refer to either an always-sufficient <u>or</u> usually-sufficient condition according to the author's intent. One definition of "when" is "at any and every time that" – similar to "whenever." See <u>Webster's Third New International Dictionary</u> 2602 (1981).

The absolutist version of "when" would support plaintiff's argument, but that is not the invariable meaning of that word. Another and no less frequent definition of "when" is "on the condition that." That definition is less absolute than the definition synonymous with "whenever"; this second meaning of "when" does not necessarily imply that the promised event will always occur once the condition occurs. Stated differently, it is unclear whether the language of the regulation should be interpreted as an "If p then q" statement in strict conformity with the classic principles of formal symbolic logic or instead as a less rigid statement that should be read alongside the author's own interpretation. Given the relationship in California law between IWC regulations and IWC statements of basis, and given California courts' deference to agency interpretations of regulations, the court concludes that Starbucks owes plaintiff a duty to maintain aprons only if the aprons require special laundering or care.

## IV

The only remaining issue is whether Starbucks's apron actually required special laundering, that is, separate laundering because of heavy soil or color. Doc #69 at 19; Doc #74 at 13. Starbucks argues that there is no genuine factual dispute on this matter because the apron's tag provided that it was machine-washable, and plaintiff has not produced evidence that the apron could not be washed safely with other garments. Doc #77 at 12-14.

Plaintiff correctly points out that whether the apron required separate washing is a factual inquiry. Doc #74 at 12. Plaintiff, however, cannot prevent summary judgment on the mere

11

1 basis that the inquiry is factual. <u>Rebel Oil Co v Atlantic
2 Richfield Co</u>, 51 F3d 1421, 1435 (9th Cir 1995). Plaintiff must
3 present admissible evidence sufficient to convince a reasonable
4 jury that the apron required separate laundering because of heavy
5 soil or color.

### A

8 Plaintiff presents two groups of evidence to defeat
9 summary judgment, both relating to the color characteristics of the
10 apron. Doc #74 at 13. First, plaintiff relies on his own
11 testimony recalling certain statements made by an employee of the
12 Sea Breeze laundry service. Doc #74 at 13-14. According to
13 plaintiff, the Sea Breeze employee "wouldn't wash the apron with
14 other clothing – do a standard laundry for it - because they were
15 worried this thing could fade into other customers' clothing." Doc
16 #75 at 26 (Exh E at 158). The Sea Breeze employee also allegedly
17 advised plaintiff that "if * * * launder[ed] in a standard washing
18 machine * * *, there's a danger that the color [of the apron] could
19 fade into the other clothing." Doc #75 at 26 (Exh E at 158).

20 Starbucks argues that the court may not rely on these
21 statements by the Sea Breeze employee because they are inadmissible
22 hearsay. Doc #77 at 14. Starbucks also challenges admissibility
23 on the basis that "nothing supports [plaintiff's] contention that
24 his dry-cleaner is an 'expert' and no information about this
25 supposed 'expertise' is ever advanced." Doc #77 at 14.

26 The court may consider declarations containing
27 inadmissible hearsay for summary judgment purposes so long as they
28 may be presented in an admissible form at trial. See <u>Fraser v</u>

**12**

1 <u>Goodale</u>, 342 F3d 1032, 1037 (9th Cir 2003).  Here, even if
2 plaintiff's testimony includes inadmissible hearsay, it may be
3 reduced to an admissible form at trial by having the declarant
4 present the evidence through direct testimony.  See <u>Fraser</u>, 342 F3d
5 at 1037, citing <u>JF Feeser, Inc v Serv-A-Portion, Inc</u>, 909 F2d 1524,
6 1542 (3d Cir 1990) (holding that hearsay evidence produced in an
7 affidavit may be considered on summary judgment if the declarant
8 could present the same evidence via direct testimony).  Plaintiff
9 stated in his deposition that Sea Breeze has only two employees
10 (who are brothers) and that he thought that the employee named
11 Justin had told him to dry-clean the apron.  Doc #70 at 12 (Exh 1
12 at 159:1-12).  Presuming that the declarant is identifiable, the
13 court need not refuse to consider these statements on the basis
14 that they are hearsay.  See <u>JF Feeser</u>, 909 F2d at 1542 (considering
15 hearsay statements at the summary judgment stage given that the
16 members of the sales department of the company would be available
17 to testify in trial).

18     Ultimately, however, plaintiff may not rely on the
19 statement because the court concludes that the statement of a Sea
20 Breeze employee that the color of the apron likely will fade into
21 other garments is nonetheless inadmissible.  The statement by a dry
22 cleaner is not admissible expert testimony under FRE 702 in the
23 absence of the "sufficient facts or data" as well as the "reliable
24 principles and methods" and their application that are the keys to
25 admissibility under that rule.  Plaintiff has shown none of that.
26     Nor does the statement attain admissibility under FRE
27 701.  A lay witness's testimony in the form of opinions or
28 inferences is limited to those opinions or inferences which are (a)

13

rationally based on the perception of the witness; (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702 governing expert testimony. FRE 701. Plaintiff's own description of the statement as "advice of a professional laundering service" and his reference to the "expert dry cleaner" belie that this is an admissible opinion of a lay witness. Doc #74 at 9; Doc #80 at 3.

As an initial matter, plaintiff has not demonstrated that the Sea Breeze employee's purported statement is rationally based on the perception of the witness. Plaintiff's assertion that Starbucks's evidentiary challenge fails because Starbucks has not "challenge[d] the dry cleaner's status as an expert" misses the mark. Doc #80 at 3. The proponent of the expert bears the burden of proving admissibility. Lust v Merrell Dow Pharmaceuticals, Inc, 89 F3d 594, 598 (9th Cir 1996). Here, plaintiff has failed to establish that the Sea Breeze employee is equipped with a sufficient level of experience in fabrics, dyes or laundering garments to qualify his testimony for admissibility.

Even were the court to accept the Sea Breeze employee as a lay expert, his opinion that the apron color would fade into other clothes is not based on sufficient facts or data. See FRE 702(1); General Elec Co v Joiner, 522 US 136, 146 (1997) (holding that a district court is not required to admit opinion evidence when there is too great of an analytical gap between the data and the opinion proffered); DSU Medical Corp v JMS Co, 296 F Supp 2d 1140, 1156-57 (N D Cal 2003) (holding that a court must exclude expert testimony that is based on speculation). Here, the Sea

14

Breeze employee never laundered the apron. His conclusion based on a brief observation of the fabric that he was "worried that [it] could fade into other customers' clothing" is simply speculation and conjecture. Doc #75 at 26 (Exh E at 158).

Plaintiff also asserts that he may use this evidence to demonstrate his state of mind or, in other words, to illustrate why plaintiff opted for dry cleaning. Doc #80 at 3; see FRE 803(3). Plaintiff may argue that a laundry service's refusal to wash the apron with other customers' clothes demonstrates that the apron required special treatment de facto. Plaintiff advances this argument implicitly in asserting that Sea Breeze "simply 'wouldn't wash the apron with other clothing * * *.'" Doc #74 at 13-14. First, plaintiff's state of mind is not the issue (still less an issue is the dry cleaner's state of mind). But even if plaintiff had requested the apron to be laundered with other garments and Sea Breeze refused, the court fails to see why a refusal by one particular laundry service demonstrates that other laundry services would have refused as well. In order to demonstrate that the apron required special treatment because it would bleed if laundered, plaintiff must present more than a statement of a single laundry service.

In sum, although the court may consider plaintiff's first set of evidence notwithstanding the fact that it contains hearsay statements of an unidentified Sea Breeze employee, plaintiff fails to establish admissibility of the Sea Breeze employee's statement. Accordingly, the employee's view of the apron's color-fastness does not help plaintiff's argument that the apron actually requires special laundering.

15

**B**

The court therefore will turn to plaintiff's second set of evidence. Plaintiff relies on a series of email exchanges between SUG employees who conducted a color-safeness test on the aprons and allegedly concluded that the apron "completely stripped" of color under washing conditions used by a professional laundry service. Doc #55 at 5, 9, 13 (Exhs A, C, E). Plaintiff uses these emails to argue that the apron showed a "propensity to fade into other items of clothing" sufficient to trigger a genuine factual dispute regarding whether the apron could be washed safely with other garments. Doc #74 at 13. Starbucks argues that these emails are inadmissible because they are either irrelevant, hearsay or unauthenticated. Doc #79 at 6-8 (##6-12); see <u>Canada v Blain's Helicopters, Inc</u>, 831 F2d 920, 925 (9th Cir 1987) (holding that unauthenticated documents cannot be considered on a motion for summary judgment).

Even if those emails are admissible, the emails do not help plaintiff's case. The emails, attached as exhibits to an affidavit of a Mr Dawson – SUG's Vice President, General Counsel and Secretary – concern a series of fabric tests that SUG conducted as a part of the manufacturing process for Starbucks's aprons. Doc #55 at ¶¶1-2. According to Mr Dawson, Starbucks had requested SUG to add pockets to the body of an existing supply of aprons. Doc #55 at ¶3. Starbucks then voiced a concern that the fabric used in the body of the apron was fading faster than the fabric used in the pockets of the apron. Doc #55 at ¶3. In response, SUG tested the colorfast or color-resistant qualities of the fabric. Doc #55 at ¶3. Before conducting the test, a John Baxter of SUG stated in an

16

email that the body and the pocket of the apron had faded disproportionately to each other because the aprons were bleached, and the body of the aprons was made of fabric that was not resistant to bleach. Doc #55 at 5, 9 (Exhs A, C). Subsequent color resistant testing corroborated that opinion, and SUG employees concluded in the emails that the aprons could be washed safely by avoiding the use of chlorine bleach; accordingly, the authors of these emails recommended that the labels on the aprons should read "No chlorine bleach." Doc #55 at 9, 13 (Exhs C, E).

Plaintiff asserts, on the basis of these emails, that the apron had a propensity to fade into other garments. Doc #74 at 13. In his attempt to create a genuine factual dispute, plaintiff cherry-picks certain phrases from these emails, leaving out portions where a SUG employee stated that the apron stripped when "heavily bleached" or "washed * * * with about 5 times the amount of bleach that would be normally used." Doc #55 at 9, 13 (Exhs C, E). The very emails on which plaintiff relies state that the apron will not fade as long as one refrained from the heavy use of chlorine. Doc #55 at 9, 13 (Exhs C, E). Consistent with SUG's testing result and recommendation, Starbucks's apron reads, "Do not bleach." See Apron (manually filed at Doc #49 Exh B). The SUG emails therefore support rather than negate Starbucks's argument that plaintiff could wash the apron safely with his other garments by avoiding the use of chlorine.

C

Under the IWC's explanation of California Code of Regulations section 11070 9(A), the apron does not require special

17

care.  See Doc #76 at 8-10, 12-14 (explaining that employees can be asked to maintain employer-furnished uniforms which require minimal time for care, for example, uniforms made of material requiring only washing and tumble or drip drying).  The only limitation described in SUG's emails is that the apron cannot be washed with bleach.  If the apron can be washed safely with other garments in ordinary detergent, then the uniform requires minimal time for care, and an employee is not entitled to compensation for its maintenance.

        Because plaintiff has failed to produce admissible evidence that the apron's dye would fade into other clothes, plaintiff has failed to contradict Starbucks's assertion that the apron could be washed with other garments and therefore did not require special care.  Furthermore, even if the emails of SUG employees are admissible, they do not make plaintiff's case.  Those emails demonstrate that the apron could be washed safely with other garments by avoiding the use of chlorine and do not indicate that the apron had a propensity to fade under normal washing conditions.

        Accordingly, plaintiff has failed to offer sufficient evidence that the apron requires special care.  And as plaintiff's counsel conceded at the hearing on this motion, if the apron can be maintained with no additional or special expense, then plaintiff cannot show an injury and thus has no standing.

D

        As a last attempt, plaintiff asserts that summary judgment on the current record is inappropriate because discovery is not yet complete.  See Doc #74 at 5 n1; 12:19-21; 14:2-4.  That

18

contention is unconvincing because plaintiff has had ample opportunity to conduct discovery. For instance, Starbucks agreed to produce a Rule 30(b)(6) witness for a deposition on December 8, 2006, to testify concerning Starbucks's apron policy and retail dress code. Doc #34 at 10. Starbucks also offered to reschedule the entire deposition for a later date if plaintiff elected to file a motion to compel. Plaintiff portrayed Starbucks's offer as "illusory" on the ground that Starbucks had failed to comply with plaintiff's interrogatories and document requests. Doc #40 at 8. Plaintiff asserted that without the requested documents, he could not complete the deposition. Plaintiff filed a motion to compel production of documents (Doc #32), which the court denied on March 3, 2007 (Doc #41). But plaintiff has not taken that deposition in the intervening sixteen months, and thus plaintiff is responsible for any lack of evidence. Any discovery disputes pertaining to class certification – such as a class list – are unrelated to whether the aprons require special care.

IV

Because no reasonable jury could conclude that Starbucks owed plaintiff a duty or that plaintiff was injured, Starbucks's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge